IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROY HENRY, JR.                                                                                    PLAINTIFF

v.                              NO. 4:13-cv-00075 JM/HDY

BARRY SIMMS, HAYLIE LOTT, DR. BROWN, DOC HOLIDAY,                DEFENDANTS
and PULASKI COUNTY REGIONAL DETENTION FACILITY

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to these findings and recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendation. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

RECOMMENDATION

INTRODUCTION. Defendants Pulaski County Regional Detention Facility ("Detention Facility") and Doc Holiday ("Holiday") have filed a joint motion for summary judgment. See Document 73.[1] Defendant Carl Johnson ("Johnson") has also filed a motion for summary judgment. See Document 77. For the reasons that follow, the undersigned recommends that the motions be granted, the complaint filed by plaintiff Roy Henry, Jr., ("Henry") be dismissed, and judgment be entered for the Detention Facility, Holiday, and Johnson.

FACTS. The undersigned has reviewed the pleadings and exhibits in this case and finds the undisputed material facts to be as follows:

1. On June 24, 2011, Henry was arrested and was incarcerated at the Detention Facility while he awaited trial. See Document 74, Exhibit A at 1.[2]

2. On January 5, 2012, he pleaded guilty to the charge for which he was arrested, see Document 74, Exhibit A at 2, and it appears that he left Holiday's custody and the Detention Facility sometime thereafter.

---

[1] Rule 56(a) provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[2] It was determined after Henry's arrest that he was not fit to proceed to trial, see Document 74, Exhibit A at 2, and he was referred to the Director of the Arkansas Department of Human Services ("DHS") for treatment "until restoration of [his] fitness to proceed, see Document 74, Exhibit A-2 at 1. Henry was treated by DHS representatives and was eventually found fit to proceed for trial. See Document 74, Exhibit A at 2.

3. During Henry's stay at the Detention Facility, he experienced a number of problems, problems he specifically identified as follows:[3]

> I wrote a grievance to county officials for their 2 week delay of dispensing medication. They, the county, promptly cut-off the air conditioning for 2 weeks. A total defiance [of the Seventh Amendment to the Constitution], then not allowing inmates to remove their shirts in an effort to sleep.
>
> The county jail is a horrible place to reside even for a short period of time. The pads are less than adequate and are never disinfected. The showers are layered with [scum] and mold, not to mention the inmates who masturbate regularly … especially when a female deputy is on duty. The floors are filthy and are cleaned with a minimal amount of bleach. …
>
> After going to court, or should I say, while going to court, the deputies refused to allow me to walk up the steps in the front of the bus, but forced me to climb up with the other inmates at the rear of the bus. I lost feeling in my left knee. When we returned from court, they could not find my cane … for 3 weeks they could not find it.
>
> After giving an inmate who earlier was beat up by 10 deputies for having a piece of toilet tissue on his underwear, I was promptly put in isolation for 4 days. Yet, a month later, I was put in solitary confinement for 8 days. More cruel and unusual punishment with no pad to lay on.
>
> I was not allowed to practice my religion without being told to dissemble. The Lord's Shabbot (Sabbath) is the most important day of the week. … The guards allowed inmates to play chess, dominoes, and cards for money (cigarettes). Yet, we could not assemble and worship our Creator. On many occasions, I had to go to the toilet room to bring in the Sabbath. …
>
> When 2 inmates escaped from the jail, some ignorant official thought

---

[3] In identifying Henry's allegations, the undersigned has considered his initial complaint, see Document 2; his first amended complaint, see Document 15; and his second amended complaint, see Document 58. The most comprehensive catalog of his problems is contained in his second amended complaint and, for that reason, they will be used. Several of his allegations implicate defendants who have been dismissed from this case. See Document 18. Those allegations will not be identified.

that … the main cause of the inmates' escape [was] the color of [their] underwear. He then closed the prison and confiscated all underwear that was not completely white. In return, we received a pair of thin mesh, female panties. After a week, most wore no underwear. Of course, you could buy underwear from commissary for an inflated price of $6.00. Most inmates have no money and [are] not able to purchase any items thru [the] commissary. … I also charge the county jail with theft and not subtracting the proper amount from an inmate's account. On several occasions, my daughters would send me CARE PACKAGES through the mail, but I noticed the receipts were identical, they subtracted the pre-paid orders from your account.

Since there was no system in place for cleaning the chairs used to watch television, dominoes, etc., there were men who never showered and others who would defecate on themselves … and every day, there is a probability that you may have sat in the same chair of a nasty man.

The food provided by the county jail was less than nutritional and given in such small increments that caused many and myself to lose weight. The meals were given on trays that resembled elementary school portions. I developed compact bowels, causing nausea and stomach discomfort. …

Under Civil Rule 16-85-101, Dr. Carl Johnson would not give me the right provided me, to call my personal physician. Nor did he call to validate the regiment of medication I was required to take daily. He told me he knows about sarcoidosis, yet he refused to treat it. If he had spoken truthfully, he would have acknowledged that there is no known cure and the prognosis is terminal, and the disease is treated with steroids to mask the symptoms.

Dr. Carl Johnson was abreast of all the physical problems that were acute in nature. Osteoarthritis is a disease that exacerbates under stress and causes extreme pain. Because of Dr. Johnson's neglect, I now have little to no cartilage in both knees. He gave me Tylenol and for a few weeks he gave me 800 mg of ibuprofen.

Dr. Johnson also knew I suffer with an acute anxiety disorder and depression which is well documented by my doctors. Dr. Johnson all but neglected to treat my high blood pressure, which caused me to fall on several occasions.

Dr. Johnson changed my medical status and forced me and 2 other

inmates to sleep on the upper bunks. There was no ladder or any other prop that could assist you in getting to the top bunk. This action took place after I (we) refused to accept a guilty plea.

    Dr. Johnson refused to give me over-the-counter medicine … [Benadryl], which several inmates received upon request.

    Dr. Johnson refused to honor his oath as a physician which supercedes any order that he may have received from county officials. I needed him, and he refused to help me.

See Document 58 at 2-5. [Emphasis omitted].

4. During Henry's stay at the Detention Facility, there was an inmate grievance procedure codified as Branch Directive D05-0001. See Document 74, Exhibit B at 1.

5. The procedure provided, in part, that in order to be timely, a grievance had to be filed within fifteen days of an incident. See Document 74, Exhibit B at 1.

6. The procedure also provided that in order to fully exhaust the process as to the issue in question, the inmate had to appeal the grievance officer's adverse decision. See Document 74, Exhibit B at 2.

7. Henry filed only one grievance during his stay at the Detention Facility, that being, a July 24, 2011, grievance in which he alleged that his medication was changed or otherwise impermissibly taken from him. See Document 74, Exhibit B at 2.

8. He received the grievance officer's response on July 28, 2011, see Document 74, Exhibit B-2, but did not thereafter appeal the officer's decision, see Document 74, Exhibit B at 2.

9. Henry filed no other grievance concerning any other aspect of his treatment at,

or the conditions of, the Detention Facility during his stay, see Document 74, Exhibit B at 2, this despite the fact that "[a]n inmate's concern over his ... health and safety is always a grieveable issue," see Document 74, Exhibit B at 2.

10. Specifically, save the allegations contained in his July 24, 2011, grievance, he did not file a grievance regarding any of the problems he alleged in his second amended complaint, i.e., (A) the air conditioning being shut off; (B) the condition of the sleeping pads and/or his sleeping arrangements; (C) the condition of the showers; (D) the condition of the floors; (E) the manner in which he was transported to and from the county courthouse; (F) his placement in isolation on two separate occasions; (G) his inability to practice his religion; (H) having his underwear of choice taken; (I) improprieties in the commissary; (J) the condition of the chairs; (K) the food; and (L) the medical care, or lack thereof, provided by Johnson.

11. With regard to some of the problems identified by Henry, the undersigned notes that there is no evidence the air conditioning to his cell was turned off on or around the time he filed his July 24, 2011, grievance. See Document 74, Exhibit A at 2.

12. "Sanitation inspections are conducted daily by the supervisor on duty to ensure the cleanliness and appearance of all areas." See Document 74, Exhibit A at 3.

13. It is true that Henry was placed in isolation or "punitive segregation" during his stay at the Detention Facility, but he was placed there only after he pleaded guilty to disciplinary charges on August 18, 2011. See Document 74, Exhibit A at 2.

14. Branch Directive D09-0001 provided, in part, that "[a]ll inmates confined to

the [Detention Facility] will be afforded the opportunity to worship and practice any recognized religion." See Document 74, Exhibit A at 3.

15. Inmates are only permitted to have "authorized underwear," and unauthorized underwear is typically confiscated at booking. See Document 74, Exhibit A at 3.

16. The food at the Detention Facility is provided by a third party contractor, and the contractor must "comply with the nutritional standards of the Recommended Dietary Allowances as stipulated by the National Academy of Sciences, American Correctional Association, and Arkansas Jail Standards." See Document 74, Exhibit A at 3.

PLEADINGS. Henry commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 1983 naming as defendants the Detention Facility; Holiday, the Sheriff of Pulaski County; and Johnson, a physician who contracted with Pulaski County to provide medical care to inmates housed in the Detention Facility.

The Detention Facility and Holiday eventually filed a motion for summary judgment. They asked that they be dismissed from this case for the following reasons: (1) the Detention Center is not a legal entity subject to being joined in this case; (2) Henry did not properly exhaust his administrative remedies prior to commencing the case; (3) to the extent Henry joined Holiday in his official capacity, Henry has failed to show an unconstitutional policy, custom, or practice; and (4) to the extent Henry joined Holiday in his individual capacity, Henry has failed to show that Holiday was personally involved in any of the alleged constitutional violations.

Johnson also filed a motion for summary judgment. He asked that he be dismissed

from this case for the following reasons: (1) Henry did not properly exhaust his administrative remedies prior to commencing this case, and (2) he has failed to set forth an actionable 42 U.S.C. 1983 claim against Johnson.

Henry responded to the defendants' motions by filing multiple pleadings. His responses were long on sweeping allegations but short on factual support. In short, he maintained that genuine issues of fact remain to be tried.

In considering the defendants' motions for summary judgment, the undersigned has viewed the facts, and inferences to be drawn from those facts, in the light most favorable to Henry. See Matsushita Electric Industrial Company v. Zenith Radio Corp., 475 U.S. 574 (1986). In considering the motions, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997) [quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)]. Applying the foregoing principles to the facts of this case, it is clear that the defendants are entitled to judgment as a matter of law.

THE DETENTION FACILITY. The Detention Facility maintains that it is not a legal entity amenable to being joined in a complaint pursuant to 42 U.S.C. 1983. The undersigned agrees. See Owens v. Scott County Jail, 328 F.3d 1026 (8th Cir. 2003) (county jails are not legal entities amendable to suit.) The undersigned therefore recommends that the Detention Facility be dismissed as a party to this proceeding.

HOLIDAY AND JOHNSON. Holiday and Johnson maintain that Henry did not properly

exhaust his administrative remedies prior to commencing this case, and the case should be dismissed for that reason. The undersigned agrees.

In Doolittle v. Smith, 2010 WL 4668796 (W.D.Ark. 2010), United States District Judge Harry F. Barnes adopted the recommendation of United States Magistrate Judge Barry A. Bryant, who found the following with respect to the exhaustion requirement in cases such as the one at bar:

> As amended by the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. …
>
> "This provision does not require exhaustion of all remedies; it requires the exhaustion of 'such administrative remedies as are available.'" Miller v. Norris, 247 F.3d 736, 740 (8th Cir.2001). The PLRA does not contain a definition of the term "available." However, the Eighth Circuit has noted that "the plain meaning of the term 'available' is 'capable of use for the accomplishment of a purpose: immediately utilizable … accessible.'" Id. (citing Webster's Third New International Dictionary 150 (1986)).
>
> The Supreme Court in Booth v. Churner, 532 U.S. 731, 738-39 … (2001) held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." Walker v. Maschner, 270 F.3d 573, 577 (8th Cir.2001). Further, the term "administrative remedies" has been held to encompass remedies not promulgated by an administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1352 (3d Cir.2002). Specifically, it has been held that a grievance procedure contained in a handbook constitutes an available administrative remedy within the meaning of 1997e(a). Conception, 306 F.3d at 1352. When all claims have not been exhausted, the case is subject to dismissal. Kozohorsky v. Harmon, 332 F.3d 1141, 1143-44 (8th Cir.2003)…
>
> When there is a multi-step grievance procedure, the courts have held that a prisoner must follow each step of the grievance procedure or be

foreclosed from litigating. See e.g., Thomas v. Woolum, 337 F.3d 720, 726-27 (6th Cir.2003)("an inmate does not exhaust available administrative remedies when the inmate … fails to commence the grievance process or to run the gamut of potential appeals.")(internal quotation marks and citation omitted); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002)("An inmate who begins the grievance process but does not complete it is barred from pursing a 1983 claim under PLRA for failure to exhaust his administrative remedies."); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir.2001)(An inmate who begins the grievance process but does not complete it is barred from pursuing a 1983 claim); Indelicato v. Suarez, 207 F.Supp.2d 216, 219 n. 2 (S.D.N.Y.2002)(The failure to timely commence a requisite step of the grievance procedure would constitute sufficient ground to dismiss an inmate's complaint); Reyes v. Punzal, 206 F.Supp.2d 431, 434 (W.D.N.Y.2002)(inmate failed to show that he went beyond first steps of exhaustion requirement …).

The exhaustion requirement is not jurisdictional and is subject to certain defenses such as waiver, estoppel, or equitable tolling. See e.g., Chelette v. Harris, 229 F.3d 684, 688 (8th Cir.2000); Underwood v. Wilson, 151 F.3d 292, 294-95 (5th Cir.1998). It has been held that the exhaustion requirement should not operate to bar an inmate's claim if prison administrators prevent or refuse to review the grievance. See e.g., Foulk v. Charrier, 262 F.3d 687, 697-98 (8th Cir.2001)(prison officials refused to respond to informal resolution request that inmate completed to satisfy the requirements of the first part of the prison's three-part grievance process); Miller v. Norris, 247 F.3d 736, 740 (8th Cir.2001)(inmate prevented from exhausting administrative remedies when prison officials failed to respond to his requests for grievance forms making the grievance procedure unavailable to him); …

The burden is on the Defendants to show the Plaintiff did not exhaust all available administrative remedies. Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir.2002). The question that must be answered is whether there was a procedure available. Id. at 809.

See Doolittle v. Smith, 2010 WL 4669179 at 4 -6 (W.D.Ark. 2010). [Emphasis in original].

Holiday and Johnson have shown that there was a multi-step grievance procedure

for inmates during Henry's stay at the Detention Facility. The procedure required, <u>inter alia</u>, that Henry file a grievance within fifteen days of an incident, and complete exhaustion required him to appeal the grievance officer's adverse decision. Save Henry's July 24, 2011, grievance in which he alleged that his medication was changed or otherwise impermissibly taken from him, he filed no grievance concerning any aspect of his treatment at, or the conditions of, the Detention Facility during his stay. Although the exhaustion requirement is capable of being waived or excused, he has not shown why it should be waived or excused in this instance. His claims relating to any problem other than the problem identified within the four corners of his July 24, 2011, grievance have not been the subject of grievances and should therefore be dismissed.

As to Henry's sole grievance, <u>i.e.</u>, the July 24, 2011, grievance, it is clear that he did not appeal the grievance officer's adverse decision. Instead, Henry did nothing. Because he failed to follow each step of the multi-step grievance procedure with respect to the July 24, 2011, grievance, the claim set forth in the grievance was not fully exhausted and should therefore be dismissed.

<u>HOLIDAY</u>. Holiday alternatively maintains that to the extent he has been joined in his official capacity, Henry has failed to show an unconstitutional policy, custom, or practice. Holiday additionally alleges that to the extent he has been joined in his individual capacity, Henry has failed to show that Holiday was personally involved in any of the alleged constitutional violations. The undersigned agrees.

To the extent Henry has joined Holiday in his official capacity, Henry has failed

to identify an unconstitutional custom or policy that resulted in his problems at the Detention Facility.[4] Although he complains of many practices, they are just that: a catalog of complaints. He has not shown a pattern of persistent and widespread practices which have become so permanent and well settled as to have the effect and force of law. To the extent Henry has joined Holiday in his individual capacity, Henry has failed to show that Holiday was personally involved in any of the alleged constitutional violations or that he failed to act.[5] Henry appears to have joined Holiday solely because he is the county sheriff. For these reasons, Holiday should be dismissed from this case.

RECOMMENDATION. On the basis of the foregoing, the undersigned recommends that the defendants' motions for summary judgment be granted. Henry's complaint

---

[4] In Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007), the Court of Appeals outlined the prevailing legal standard for official capacity claims:

> A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself. Hafer v. Melo, 502 U.S. 21 ... (1991) (citing Kentucky v. Graham, 473 U.S. 159, 166, ... (1985)). A governmental entity cannot be held vicariously liable for its agent's acts under 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 ... (1978). Rather, a plaintiff must identify a governmental "policy or custom that caused the plaintiff's injury" to recover from a governmental entity under 1983. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 ... (1997) (citations and quotations omitted). A governmental policy "involves a deliberate choice to follow a course of action ... made from among various alternatives by an official who has the final authority to establish governmental policy." Doe v. Special Sch. Dist., 901 F.2d 642, 645 (8th Cir.1990) (quotations and citations omitted). A governmental custom involves "a pattern of 'persistent and widespread' ... practices which bec[o]me so 'permanent and well settled' as to have the effect and force of law." Id. at 646 (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018). "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir.2005).

[5] A supervisor incurs liability in a case pursuant to 42 U.S.C. 1983 when "the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." See Ottman v. City of Independence, 341 F.3d 751 (8th Cir. 2003).

should be dismissed, and judgment should be entered for the Detention Facility, Holiday, and Johnson.

DATED this __8__ day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE